O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PRIVACYWEAR, INC., a Nevada Corporation; and CAROLYN M. JONES, an individual, | ) ) ) ) | Case No. EDCV 07-1532-VAP (OPx) |
| | ) | **[Motion filed on July 24, 2009]** |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIMS** |
| QTS & CTFC, LLC, a Nebraska Limited Liability Company; and JONATHAN NASH, an individual, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Plaintiffs' Motion to Dismiss Counterclaims came before the Court for hearing on August 17, 2009.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS IN PART and DENIES IN PART the Motion.

# I. BACKGROUND

## A. Procedural Background

Plaintiffs PrivacyWear and Carolyn M. Jones ("Jones" or "Plaintiff Jones") filed their Complaint on November 20, 2007, and their First Amended Complaint ("FAC") on March 18, 2008.  The FAC alleges the following claims against Defendants QTS & CTFC, LLC ("QTS" or "Defendant QTS") and Jonathan Nash ("Nash" or "Defendant Nash"): (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) failure to acknowledge satisfaction of judgment, (4) unjust enrichment, (5) fraud in the inducement, and (6) for declaratory relief.

The procedural background of this case is set forth at length in the Court's September 24, 2008 Order.  See Docket No. 24.  In that Order, the Court invoked the Colorado River doctrine and stayed this case in favor of the California state court proceedings seeking to enforce the Nebraska judgment.  In status reports filed on April 1 and April 2, 2009, the parties informed the Court that those state proceedings are substantially concluded, as follows.

In an order dated November 10, 2008, the California Court of Appeals vacated the judgments entered in favor of QTS against PrivacyWear and Jones, finding that the Nebraska judgment upon which the Superior Court's

judgment for QTS was based had been rendered in excess of the Nebraska court's jurisdiction.  Specifically, the Court of Appeals found QTS failed to demonstrate that Nebraska had personal jurisdiction over PrivacyWear and Jones when it entered its default judgment against them. After the Court of Appeals denied QTS's Petition for a Rehearing, the Superior Court vacated the sister-state judgments.

On April 16, 2009, this Court lifted its stay, reset Defendants' Motion to Dismiss, and allowed the parties to file supplemental briefs relating to the Motion.  On May 21, 2009, the Court denied the Motion to Dismiss.

On June 5, 2009, Defendants filed an Answer to the Amended Complaint and Counterclaims against Plaintiffs. Defendants filed Amended Counterclaims ("AC") against Plaintiffs on July 7, 2009, alleging the following: (1) Breach of Investment Contract; (2) Breach of Oral Contract; (3) Request for Accounting Prior to Nebraska Default Judgments; (4) Fraudulent Concealment; (5) Fraudulent Conversion of QTS's 2.5% PrivacyWear Stock; (6) Embezzlement; (7) Forgery; (8) Theft by Deception; (9) Breach of Investment Contract Based on Dilution; (10) Breach of Fiduciary Duty; (11) Breach of Covenant of Good Faith and Fair Dealing; (12) Breach of Oral Contract Based on Non-Performance; (13) Breach of Oral Contract

Based on Non-Performance; and (14) Fraudulent
Misrepresentation.

On July 24, 2009, Plaintiffs/Counter-Defendants
("Plaintiffs") filed a Motion to Dismiss ("Motion")
Defendants/Counter-Claimants' ("Defendants") First
through Eleventh and Fourteenth Counterclaims and a
Request for Judicial Notice ("Defs. RJN").[1]  Defendants
filed Opposition on August 3, 2009.  Plaintiffs filed a
Reply on August 7, 2009 and a Request for Judicial Notice
("Pls. RJN").[2]

**B.  Counterclaimants' Allegations**

For the purposes of this Motion, the Court accepts
the following allegations in the Amended Counterclaims
("Counterclaims" or "AC") as true.

Plaintiff PrivacyWear, Inc. ("PrivacyWear" or
"Plaintiff PrivacyWear") is a Nevada corporation.  (AC ¶¶
2, 3.)  Plaintiff Carolyn M. Jones ("Jones" or "Plaintiff
Jones") is the president and CEO of PrivacyWear.  (Id. at
¶ 5)  In 2004, Plaintiff PrivacyWear and Defendant
Jonathan Nash ("Nash" or "Defendant Nash") entered into
an agreement whereby Nash invested $50,000 in PrivacyWear

_____

[1] The Court GRANTS Defendants' RJN.

[2] The Court GRANTS Plaintiffs' RJN.

4

1  and obtained a 2.5% interest in the company.  (<u>Id.</u> at ¶¶
2  9, 10.)

3

4      Nash is the sole member and manager of Defendant QTS
5  & CTFC, LLC ("QTS"), a Nebraska limited liability
6  corporation.  (<u>Id.</u> at ¶ 2.)  In 2005, QTS sued Plaintiffs
7  in Nebraska state court for breach of contract and
8  related claims arising out of the parties' investment
9  agreement.  (<u>Id.</u> at ¶ 23.)  In 2006, the Nebraska court
10 entered default judgment in favor of QTS and against
11 Plaintiffs.  (Id. at ¶ 24.)  After the Nebraska judgment
12 was entered, the parties entered into an oral agreement
13 under which QTS would accept $1,400,000 from Jones and
14 PrivacyWear in full satisfaction of the entire judgment,
15 in addition to certain agreed upon terms. (<u>Id.</u> at ¶ 28.)
16

17     In September 2006, Plaintiffs paid $400,000 to
18 satisfy the judgment, but Defendant Nash continued to
19 demand payment of additional money.  (<u>Id.</u> at ¶ 30.)  On
20 October 6, 2006, Defendant Jones sent Defendant Nash the
21 following electronic mail message ("email"):
22      "... (2) When the documents [private placement
23      memorandum and related documents] reference current
24      owners/shareholders, I did not reference your name or
25      your 2.5% ownership because at that time you had
26      already filed legal documents against me and the
27      company, so I didn't think it was wise to reference
28

1       your name in any manner.  I did however keep note of

2       your ownership, but placed under my name for the

3       purposes of this document."  (Id. at ¶ 36.)

4

5       Based on that communication, Defendants allege Jones

6 fraudulently converted their 2.5% ownership interest in

7 PrivacyWear.  (Id. at ¶¶ 25-37.)  Defendants also learned

8 Jones diluted their 2.5% ownership interest in connection

9 with PrivacyWear's reverse merger with SP Holdings, Inc.,

10 without their permission or knowledge.  (Id. at ¶ 38.)

11 In November 2007, Defendants learned PrivacyWear was

12 involved in another stock purchase agreement with another

13 apparel company, without their permission or knowledge.

14 (Id. at ¶ 41.)  Finally, in April 2007, Defendants

15 learned Jones breached their settlement agreement and

16 represented PrivacyWear would be unable to pay the full

17 $1,400,000 settlement.  (Id. at ¶ 43.)  On multiple

18 occasions, Plaintiffs refused to provide Defendants with

19 an accounting.  (Id. at ¶¶ 45, 46.)

20

21       QTS then filed suit in the California Superior Court

22 for Riverside County to enforce the default judgment it

23 obtained in Nebraska, and Plaintiffs filed the instant

24 lawsuit.

25

26

27

28

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  In addition, the Court must accept all material allegations in the complaint - as well as any reasonable inferences to be drawn from them - as true.  <u>See</u> <u>Doe v. United States</u>, 419 F.3d 1058, 1062 (9th Cir. 2005); <u>ARC Ecology v. U.S. Dep't of Air Force</u>, 411 F.3d 1092, 1096 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic</u>, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  <u>Id</u>.

1     In other words, the allegations must be plausible on

2 the face of the complaint.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556

3 U.S. __, 129 S. Ct. 1937, 1949 (2009).  "The plausibility

4 standard is not akin to a 'probability requirement,' but

5 it asks for more than a sheer possibility that a

6 defendant has acted unlawfully.  Where a complaint pleads

7 facts that are 'merely consistent with' a defendant's

8 liability, it stops short of the line between possibility

9 and plausibility of 'entitlement to relief.'"  <u>Id.</u>

10 (citations and internal quotations omitted).

11

12     Although the scope of review is limited to the

13 contents of the complaint, the Court may also consider

14 exhibits submitted with the complaint, <u>Hal Roach Studios,</u>

15 <u>Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19

16 (9th Cir. 1990), and "take judicial notice of matters of

17 public record outside the pleadings," <u>Mir v. Little Co.</u>

18 <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

19

20                  **III. DISCUSSION**

21    Plaintiffs move the Court to dismiss Defendants'

22 First through Eleventh and Fourteenth Amended

23 Counterclaims.  (<u>See</u> Mot. at 1-2.)

24

25

26

27

28

**A.   Investment Contract-Related Claims**

First, Plaintiffs argue Defendants' First through Tenth Counterclaims fail because they seek to enforce the terms of the written Investment Contract while they simultaneously seek to enforce the terms of an oral settlement of the claims arising from the Investment Contract. (See Mot. at 5-7.) Specifically, Plaintiffs argue Defendants may not seek to enforce the terms of the original contract and the terms of the settlement agreement because the settlement extinguished the terms of the original Investment Contract. (Id. at 6 ("a settlement agreement for release of claims essentially operates as a new contract and operates as a merger and bar of all pre-existing causes of action.").)

"The [California] Supreme Court has explained that a settlement operates as a merger and ban as to all pre-existing claims...." Ebensteiner Co., Inc. v. Chadmar Group, 143 Cal. App. 4th 1174, 1179 (2006). "Even if entered into after the rendition of a judgment on the disputed agreement or right, the compromise agreement has the same legal effect." Id. (quotations and citation omitted).

In Opposition, Defendants argue their claims are actionable because they "seek relief for two different categories of actionable conduct by Counter-Defendants:

1  (1) damages for breach of the September 2006 oral
2  agreement because PrivacyWear/Diamond Decisions failed to
3  pay all monetary amounts owed; and (2) damages for
4  breaches of the Investment Contract (to the extent it was
5  not part of the September 2006 oral agreement) and
6  damages for breaches (not related to the payment of
7  monies) of the September 2006 oral agreement." (Opp'n at
8  4.) In other words, Defendants allege breaches of the
9  settlement agreement and breaches of the duties in the
10 Investment Contract, to the extent the settlement did not
11 cover all Defendants' claims arising under the Investment
12 Contract.

13

14     Defendants' Counterclaims One through Ten are not
15 barred by the entry of the Settlement Agreement. First,
16 the claims, sounding in contract and tort law, arise from
17 alleged breaches of the Settlement Agreement and events
18 occurring after the parties entered into the Agreement.
19 (See Opp'n at 11-13 (emphasis added).) As Defendants
20 point out, under California law, a settlement or release
21 does not bar claims for future actionable conduct. See
22 Cal. Civ. Code § 1542. Second, the claims arise from
23 alleged breaches of the Investment Contract, only insofar
24 as the Settlement Agreement did not cover all of
25 Defendants' claims arising under the Investment Contract.
26 If not all of Defendants' claims were covered by the
27 settlement agreement, Defendants may pursue those
28

1   remaining claims, even though they resolved other claims.

2   Ebensteiner Co., Inc., 143 Cal. App. 4th at 1179.

3

4       Accordingly, the Court DENIES Plaintiffs' Motion to

5   Dismiss Defendants' First through Tenth Counterclaims,

6   insofar as it is based on this argument.[3]

7

8   **B.   Derivative Shareholder Counterclaims**

9       Next, Plaintiffs move the Court to dismiss

10  Defendants' Counterclaims because they are derivative,

11  brought by a shareholder, and did not satisfy the

12  procedural requirements for filing such claims.  (See

13  Mot. at 8-10.)

14

15      A party filing a shareholder derivative lawsuit

16  stands in the shoes of the corporation and raises claims

17  belonging to the corporation and seeks compensation for

18  its injuries.  See Kamen v. Kemper Fin. Serv., Inc., 500

19  U.S. 90, 95-97 (1991); McDermott, Will & Emery v.

20  Superior Court, 83 Cal. App. 4th 378, 382 (2000); Fed. R.

21  Civ. P. 23.1.  Before filing a shareholder derivative

22  lawsuit, the shareholder must first demand the board of

23

24  ─────────────
        [3] The parties argue about the differences found
25  between Defendants' Counterclaims and Amended
    Counterclaims.  The Court does not address these
26  arguments because it considers only the operative
    pleading, the Amended Counterclaims, for purposes of this
27  Motion.  See Forsyth v. Humana, Inc., 114 F.3d 1467, 1474
    (9th Cir. 1997) (an amended pleading supersedes the
28  original and renders it non-existent).

directors and, if necessary, the remaining shareholders, take action on behalf of the corporation.  See Kamen, 500 U.S. at 96; Fed. R. Civ. P. 23.1.

In Opposition, Defendant argues its Counterclaims do not amount to a shareholder derivative lawsuit; thus, the special procedural requirements of such a lawsuit do not apply.  (See Opp'n at 13-15.)  Specifically, Defendants argue their Counterclaims arise from personal injuries and are not brought on behalf of the corporation.  (Id.) Furthermore, Defendants argue only Defendant QTS is a shareholder of PrivacyWear, and not Defendant Jonathan Nash.  (Id. at 14)

On its face, Defendants' Amended Counterclaims do not appear to be brought on behalf of or in the shoes of PrivacyWear by Defendants.  First, Defendant Nash's Counterclaims are not properly construed as being derivative because he was not a PrivacyWear shareholder. (See Opp'n at 14; AC ¶ 9.)  Second, with one exception, Defendant QTS's Counterclaims allege claims against PrivacyWear and its Chief Executive Officer Carolyn M. Jones for injuries to itself, not for injuries to PrivacyWear, and seek damages for itself, not on behalf of PrivacyWear.  (See generally AC.)

1    The exception is Defendants' Ninth Amended
2   Counterclaim, for "Breach of Investment Contract Based on
3   Dilution," which is derivative in nature.  As Plaintiffs
4   point out in their Reply, a claim for dilution of stock
5   value is a claim shared by all shareholders and is
6   considered derivative.  (See Reply at 4-5 (citing Kramer
7   v. W. Pac. Indus., Inc., 546 A.2d 348, 353 (Del. 1988);
8   Schuster v. Gardner, 127 Cal. App. 4th 305, 316 (2005);
9   Gaillard v. Natomas Co., 208 Cal. App. 3d 1250, 1251
10   (1989).)  As a derivative claim, Defendants' Ninth
11   Counterclaim must comply with the requisite filing
12   requirements, i.e., making a demand on the corporation's
13   board of directors and, if necessary, all shareholders,
14   before filing a derivative action.  See Kamen, 500 U.S.
15   at 95-97.  Furthermore, Defendants' allegations of
16   divestment, arising out of an alleged "reverse merger
17   with SP Holdings, Inc.," must comply with the same
18   procedural prerequisites.  (See AC ¶¶ 38, 111-118,
19   122(iv), 127(iv).)  Defendants fail to allege facts
20   demonstrating compliance with these filing prerequisites.
21
22
23    Accordingly, only Defendants' Ninth Counterclaim
24   amounts to a derivative claim by a shareholder and must
25   comply with the applicable special procedural
26   requirements.  The Court GRANTS Plaintiffs' Motion to
27   Dismiss as to Defendants' Ninth Counterclaim only.
28

**C.   Counterclaim Four, for Fraudulent Concealment**

Next, Plaintiffs move the Court to dismiss Defendants' Fourth Counterclaim, for fraudulent concealment.  (See Mot. at 11.)  Plaintiffs argue the Counterclaim fails to allege the requisite "causal nexus" between the alleged fraudulent concealment and its damages.  (Id.)

To state a claim for fraudulent concealment under California law, a party must plead factual allegations supporting each of the following elements: (1) party concealed a material fact; (2) party had duty to disclose fact to the injured party; (3) party intentionally concealed fact with intent to defraud the injured party; (4) the injured party was unaware of the fact and would not have acted as she did if she knew of the concealed fact; and (5) the injured party was injured because party concealed the fact.  See Hahn v. Mirda, 147 Cal. App. 4th 740, 748 (2007) (quoting Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603, 612-13 (1992).).

Defendants allege PrivacyWear concealed Defendant QTS's 2.5% ownership interest in at least one private placement memorandum sent to potential investors.  (See AC ¶¶ 73-80 (Plaintiff Jones told Defendant Nash she intentionally did not include QTS's 2.5% interest in the private placement memorandum because QTS and Nash had

14

1  filed a Complaint against PrivacyWear and "legal disputes
2  would make people nervous about investing.")   In
3  Opposition, Defendants argue this concealment damaged
4  them because "QTS has been deprived of its 2.5% ownership
5  interest in Privacy Wear/Diamond Decisions."  (Opp'n at
6  15.)

7

8      Defendants' Fourth Counterclaim fails because
9  Defendants cannot allege facts to support elements three
10  and five.  Defendants do not allege how they were injured
11  by Plaintiffs' investor publications, nor do Defendants
12  allege how Plaintiffs intended to defraud them
13  specifically, as opposed to potential investors.
14  Furthermore, Defendants' purported injury as a result of
15  this alleged concealment - that it lost its 2.5%
16  ownership interest in PrivacyWear - is unsupported by its
17  own factual allegations in this Counterclaim.  (See AC ¶
18  80 (alleging general damages as result of
19  misrepresentation of QTS ownership interest in
20  PrivacyWear's private placement memorandum without
21  reference to any actual loss of the ownership interest).)
22

23      Accordingly, the Court GRANTS Plaintiffs' Motion to
24  Dismiss Defendants' Fourth Counterclaim, without leave to
25  amend.

26

27

28

**D.  Counterclaims Five Through Eight, for Conversion, Theft, Forgery, and Embezzlement**

Plaintiffs move the Court to dismiss Defendants' Fifth through Eighth Counterclaims because they fail as a matter of law.  (<u>See</u> Mot. at 12-14.)  Specifically, Plaintiffs argue these claims fail because QTS's 2.5% ownership interest in PrivacyWear remained intact and was never appropriated by Plaintiffs.  (<u>Id.</u> at 12.)

Defendants' Counterclaims arise out of the factual allegations discussed above, concerning fraudulent concealment.  Defendants base these Counterclaims on the misrepresentations in the private placement memorandum sent to potential investors.  (<u>See</u> Opp'n at 16-17; AC ¶¶ 82-87 (conversion); ¶¶ 89-94 (embezzlement); ¶¶ 96-103 (forgery); ¶¶ 105-110 (theft by deception).)  Defendants' factual allegations supporting these Counterclaims are identical.

To state a claim for conversion, a party must allege facts to support the following elements: (1) party's ownership of property; (2) wrongful dispossession of property by another; and (3) damages to party caused by dispossession of property.  <u>Burlesci v. Peterson</u>, 68 Cal. App. 4th 1062, 1065-66 (1998).

1    Based on the face of the Amended Counterclaims, the

2  Court finds Defendants do not state a claim for

3  conversion because they do not plead facts to show how a

4  misrepresentation or concealment of material fact in a

5  PrivacyWear private placement memorandum, discussed

6  above, divested QTS of its 2.5% ownership interest in

7  PrivacyWear.   In Opposition,[4] Defendants argue Jones'

8  communication to Nash "shows that Jones transferred QTS's

9  2.5% ownership interest into her own name."  (Opp'n at

10 17.)  Defendants' own allegations do not support this

11 argument.   Defendants allege Jones stated the following

12 in an email to Nash:

13      "When the documents reference current

14      owners/shareholders, I did not reference your name or

15      your 2.5% ownership because at that time you had

16      already filed legal documents against me and the

17      company, so I didn't think it was wise to reference

18      your name in any manner.   I did however keep note of

19      your ownership, but placed under my name for purposes

20      of this document."

21 (AC ¶ 84 (quoting October 6, 2006 electronic mail from

22 Jones to Nash, explaining PrivacyWear's private placement

23

24      [4] Defendants argue Plaintiffs' arguments are improper
   on this Motion because they require factual analysis,
25 beyond what is required on a Motion to Dismiss.  (See
   Opp'n at 16-17.)   Contrary to Defendants' assertions, the
26 Court must consider each factual allegation in support of
   each Counterclaim to determine whether or not, assuming
27 the allegations are true, a cognizable legal claim has
   been stated.   See Doe v. United States, 419 F.3d at 1062;
28 ARC Ecology, 411 F.3d at 1096.

memorandum.)  This allegation supports an inference that
Jones identified QTS's 2.5% ownership interest in the
private placement memorandum as her own asset, but does
not support an inference that, by doing that, Jones
divested QTS's ownership interest unilaterally.
Furthermore, Defendants do not cite authority to show
that a private placement memorandum can change ownership
interests in a company.  On the face of the Amended
Counterclaims, this claim is not plausible.  See Ashcroft
v. Iqbal, 129 S. Ct. at 1949.  Accordingly, Defendants
fail to plead facts to support the elements of
dispossession and damages.

    As to Defendants' Counterclaims for embezzlement,
forgery, and theft, the Court finds these claims
duplicative of Defendants' Counterclaim for conversion.

    Accordingly, the Court GRANTS Plaintiffs' Motion to
Dismiss Defendants' Counterclaims Five through Eight,
with leave to amend.

**E.   Counterclaim Fourteen, for Fraudulent**
**      Misrepresentation**

    Plaintiffs move the Court to dismiss Defendants'
Fourteenth Counterclaim, for fraudulent
misrepresentation, because the claim fails as a matter of
law.  (See Mot. at 14-16.)

To state a claim for fraudulent misrepresentation, a party must allege facts to support the following elements: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages.  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1126 (9th Cir. 2009).

Allegations of fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  <u>See</u> Fed. R. Civ. P. 9(b).  Rule 9(b) applies when a complaint specifically alleges fraud as an essential element of a claim.  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  It also applies when the claim "sounds in fraud," by alleging the defendant engaged in fraudulent conduct, but the claim itself does not contain fraud as an essential element.  <u>Id.</u> at 1106.  Indeed, even if a complaint does not assert explicitly a claim for fraud and even if none of the claims in a complaint "sound in fraud," *any* allegations of fraudulent conduct in a complaint must be pled with particularity.  <u>Id.</u> at 1102-05.

To satisfy the requirements of Rule 9(b), "[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  <u>Id.</u> at 1106 (quotation

omitted).  Such allegations "must be accompanied by the
who, what, when, where, and how of the misconduct
charged."  Id. (citation omitted, internal quotation
omitted).  Specifically, the allegation must include "an
account of the time, place, and specific content of the
false representations as well as the identities of the
parties to the misrepresentations."  Swartz v. KPMG LLP,
476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v.
Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).

    Rule 9(b)'s particularity requirement must be read in
harmony with Rule 8 of the Federal Rules of Civil
Procedure, requiring a "short and plain" statement of the
claim.  See Spiegler v. Home Depot U.S.A., Inc., 552 F.
Supp. 2d 1036, 1044 (C.D. Cal. 2008).  Thus, the
particularity requirement is satisfied if the complaint
"identifies the circumstances constituting fraud so that
a defendant can prepare an adequate answer from the
allegations."  Moore v. Kayport Packaging Exp., Inc., 885
F.2d 531, 540 (9th Cir. 1989).

    Here, Defendants' Fourteenth Counterclaim alleges (1)
Jones (who) misrepresented to QTS (who) that PrivacyWear
could pay $1.4 million for their settlement agreement
(what), but that she made this representation falsely
because she knew, or should have known PrivacyWear was
not that strong financially (why); (2) with intent to

defraud; (3) QTS reasonably and detrimentally relied on
the statement by agreeing to settle their dispute (why);
and (4) the misrepresentation damaged QTS because
PrivacyWear only paid $400,000.  (See AC ¶¶ 145-149.)
These allegations satisfy <u>Vess</u> because they provide
sufficient detail of the alleged fraudulent
misrepresentation such that Plaintiffs can fashion an
answer.  317 F.3d at 1103-04.

Next, Plaintiffs argue Defendants' Fourteenth
Counterclaim must fail because "they did not rely on said
misrepresentations to their detriment."  (Reply at 7.)
Contrary to Plaintiffs' argument, Defendants allege they
detrimentally relied on Jones' representation; this
factual allegation is sufficient to satisfy Rule 8 of the
Federal Rules of Civil Procedure.

Accordingly, the Court DENIES Plaintiffs' Motion to
Dismiss Defendants' Fourteenth Counterclaim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART
and DENIES IN PART Plaintiffs' Motion to Dismiss
Defendants' Amended Counterclaims.  The Court
specifically rules as follows:

1  •     DENIES Motion to Dismiss Defendants'
2        Counterclaims One through Ten because they do
3        not run afoul to California law;
4  •     GRANTS Motion to Dismiss Defendants' Ninth
5        Counterclaim, for Breach of the Investment
6        Contract by Dilution, because it does not comply
7        with procedural prerequisites for shareholder
8        derivative claims, with leave to amend;
9  •     GRANTS Motion to Dismiss Defendants' Fourth
10       Counterclaim for fraudulent concealment, without
11       leave to amend;
12 •     GRANTS Motion to Dismiss Defendants' Fifth
13       through Eighth Counterclaims for conversion,
14       theft, embezzlement, and forgery, with leave to
15       amend; and
16 •     DENIES Motion to Dismiss Defendants' Fourteenth
17       Counterclaim, for fraudulent concealment.

20 Dated: August 20, 2009

VIRGINIA A. PHILLIPS
United States District Judge

22